UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MT. PLEASANT BLACKTOPPING
COMPANY, INC.

    Plaintiff,

vs.

GREENE COUNTY, OHIO, *et al.*,

    Defendants.

Case No. 3:18-cv-417

District Judge Michael J. Newman

---

**ORDER AND ENTRY: (1) DENYING PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT AGAINST GREENE COUNTY (DOC. 84) AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS RELATED TO INVERNESS (DOC. 83); (2) GRANTING DEFENDANT GREENE COUNTY AND DEFENDANT VOLKERDING'S MOTION FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF'S FEDERAL CLAIMS, BUT DENYING SUCH MOTION WITH REGARD TO PLAINTIFF'S STATE-LAW CLAIMS (DOC. 82); (3) DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS; (4) DENING AS MOOT THE PARTIES' REMAINING MOTIONS (DOCS. 96, 104, 109, 113, 117, 122); (5) DIRECTING THE CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANTS ON PLAINTIFF'S FEDERAL CLAIMS AND DISMISS WITHOUT PREJUDICE PLAINTIFF'S REMAINING STATE-LAW CLAIMS; AND (6) TERMINATING THIS CASE ON THE DOCKET**

---

This construction case arises from Defendants' inspection of multiple sewer lines installed in a Greene County, Ohio residential subdivision by Plaintiff Mt. Pleasant Blacktopping ("MPB"). Once the sewer lines at issue were found in violation of certain Greene County regulations – and Greene County required them to be removed and reinstalled – MPB refused to do so and this litigation resulted. Now at issue, on summary judgment review, is, *inter alia*, whether Greene County's "remove and replace" directive violated MPB's constitutional rights as a matter of law.

For the reasons that follow, we find no such constitutional rights were violated here, and so grant summary judgment in Defendants' favor.

This civil case -- brought by MPB against Defendants Greene County, Ohio and Greene County Sanitary Engineer, Ronald Volkerding ("Greene County Defendants") -- is before the Court on the following cross-motions for summary judgment: (1) Defendants' motion for summary judgment (doc. 82); (2) MPB's renewed motion for partial summary judgment on its arbitrary enforcement claim against Greene County and Volkerding (doc. 84); and (3) MPB's motion for summary judgment on claims related to the developer of the residential subdivision, Defendant Inverness Group, Inc. ("Inverness") (doc 83). Also before the Court are a number of other motions related to the summary judgment briefing: Greene County's two motions to strike certain affidavits (doc. 96, 113); Inverness' motion to strike certain declarations (doc. 104);  MPB's motion for leave to file a USB Flash Drive (doc. 109); Greene County's motion to strike attachments (doc. 117); and MPB's motion to strike certain assertions in the Defendants' summary judgment pleadings (doc. 122). All of the motions are fully briefed (docs. 85, 86, 95, 98, 99, 100, 102, 103, 108, 110, 111, 112, 114, 115, 116, 119, 120, 121, 123, 124, 125, 126, 127, and 128). The Court has carefully considered all of the foregoing, as well as all Rule 56 evidence submitted by the parties, and these motions are now ripe for decision.

## I.

The undisputed facts of this matter are as follows: Sugar Creek is a single-family residential development in Greene County, Ohio that is currently under construction. Doc. 1 at PageID 4.  In July 2016, MPB contracted with Inverness, a property developer, to construct and install sanitary sewer lines in "Section 4" of the Sugar Creek development. Doc. 82 at PageID 2863. The contract obligated MPB to comply with the regulations and specifications of the Greene County Sanitary

Engineering Department ("Sanitary Regulations"). Doc. 13-1 at PageID 80-81, 83, 85-86, 89, 93. The contract further required that that the work "be performed in accordance with the Contract Documents"; "be free of defects"; and "conform to the requirements of all governmental agencies, and all public utility companies having jurisdiction over the Project." Doc. 13-1 at PageID 80. MPB was also "responsible for testing [the] system and receiving approval and acceptance from the local Sanitary Sewer Department." Doc. 13-1 at PageID 93.

New sewer lines must undergo a county-mandated approval process provided for in the Sanitary Regulations. Doc. 82 at PageID 2865. MPB installed the new sanitary sewer lines in June and July of 2017. Doc. 1 at PageID 4-6. In November and December 2017, MPB and the Greene County inspector tested the sanitary lines as required by the Sanitary Regulations, including "(a) mandrel testing for any deflection in the lines exceeding 5% of the eight-inch pipe diameter, (b) air testing for pipe leakage, and (c) flushing of the pipes and follow-on T-V camera inspections." Doc. 1 at PageID 7.

At issue here is the T-V camera inspection provision. The T-V inspection test is performed on sewer pipes to determine whether they contain standing water, which constitutes evidence of "sags" or "bellies" in the lines. Doc. 82 at PageID 2867. A "sag" or "belly" is a low or flat spot in a sewer line where water, or solids from a liquid, can settle. Doc. 81 at PageID 3763. Section 3.8 of the Sanitary Regulations provide the requirements for the T-V inspection and states "[i]f the interior of the pipe shows any misalignment, displaced pipe, or any other defects, the defects, designated by the County, shall be remedied by the Contractor." Doc. 82 at PageID 2865. Additionally, Section 3.9.8 of the Sanitary Regulations provides that, "[d]uring the course of the videotaping, should the camera lens encounter standing water, the sanitary sewer in that area shall be considered unacceptable and shall be dug up and replaced." Doc 57-2 at PageID 512.

On December 1, 2017, Shane Sexton, a Water and Sewer Inspector for the Greene County Sanitary Engineering Department, was onsite to oversee the T-V inspection test. Doc. 72 at PageID 804, 838-39. During the inspection, Sexton purportedly observed "significant water laying in a couple spots." Doc. 72 at PageID 839. Greene County asserted that they did not want to accept new sanitary sewer lines with significant standing water because the sags are considered a "defect" and the lines will "potentially become obstructed with debris, grease, and other materials placed in those lines by residents, leading to ongoing maintenance issues for Greene County." Doc. 82 at PageID 2868.

After the T-V inspection conducted on December 1, 2017, Sexton brought videos of the inspection to three Greene County officials: the Inspection Supervisor; the Assistant Director of the Sanitary Sewer Engineering; and the Sanitary Engineer, Volkerding. Doc. 72 at PageID 779, 841; doc. 80 at PageID 2542-43; doc. 81 at PageID 2727-28. Together, these three officials determined that there was deep standing water in the sewer lines. They therefore ordered that certain portions of the sewer lines be removed and replaced. Doc. 78 at PageID 1871, 1878-1879. This repair work was never begun. MPB estimates that it would cost between $196,000 to $250,000 to comply with the directive. Doc. 1 at PageID 8. Because of this remove and replace directive, and MPB's refusal to comply with the directive, MPB was declared in default of its contract with Inverness. *Id*.

MPB filed this action on December 21, 2018 against the Greene County Defendants and joined Inverness as a necessary party. *See generally* doc. 1. MPB brings this lawsuit alleging that Greene County arbitrarily and unreasonably required it to replace the sanitary lines and that Volkerding tortiously interfered with the contract between MPB and Inverness. *See generally* doc. 1. Subsequently, Inverness filed a counterclaim for breach of contract. Doc. 13 at PageID 13. This

4

case is now before the Court on the parties' cross-motions for summary judgment on the arbitrary enforcement claim, and MPB's motion for summary judgment on Inverness' counterclaim. Doc. 82, 83, 84.

## II.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id.* (citation omitted). Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id*. at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id.*

The Court's standard of review does not change when the parties file cross-motions for summary judgment. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions"). Thus, in reviewing cross-motions for summary judgment, the Court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

**III.**

MPB seeks summary judgment, on its federal claims that the Greene County directive is: (1) a violation of its substantive due process rights; (2) an equal protection violation; and (3) vague as-applied to MPB. MPB also brings several state-law claims. The Greene County Defendants move for summary judgment on MPB's claims, contending that the rejection of the defective sewer lines was rational because the lines failed to meet the requirements set out in the Sanitary Regulations and could lead to ongoing maintenance issues. MPB fails to provide any evidence

suggesting that Defendants' decision to reject the faulty pipes is not rationally based on concerns of local public health and safety.

### A. Substantive Due Process Claim

"To prevail on a substantive due-process claim, a plaintiff must show that the government 'has been guilty of arbitrary and capricious conduct in the *strict* sense, meaning that there is no rational basis' for the decision." *Wayne Watson Enter., LLC v. City of Cambridge*, 243 F. Supp. 3d 908, 925 (S.D. Ohio 2017) (emphasis in original) (quoting *Andreano v. City of Westlake*, 136 F. App'x 865, 872 (6th Cir. 2005)). Local government action is arbitrary and capricious only when it either lacks a "rational basis" or is "willful and unreasoning, without consideration and in disregard of the facts or circumstances of the case." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221–22 (6th Cir. 1992). In other words, state or local decision-making "may not be set aside as arbitrary and capricious if there is 'some factual basis' for the administrative action." *Id.* at 1222.

Given the deference federal courts must give local and state decision-making, "it is extremely rare for a federal court to vitiate the action of a [governmental entity] as a violation of substantive due process." *Wayne Watson Enter.*, 243 F. Supp. 3d at 925; *See also Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008) (citation and quotations omitted) (holding that "[a] court should not interfere with local" land use "decisions unless the locality's action has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare"). Whether a local government action is arbitrary and capricious "is a matter of law for the court" to decide. *Pearson*, 961 F.2d at 1222. Local government action will survive a substantive due process attack as long as it is supported by a rational basis. *Andreano*, 136 F. App'x 865 at 872.

MPB asserts that Greene County's directive constitutes "deliberate indifference" under the "shock the conscience" standard. Doc. 84 at PageID 2996. Alternatively, MPB asserts that Greene County's action was "extremely irrational" or an "irrational exercise of power." *Id.* MPB does not challenge, however, Greene County's finding that the pipes were defective. Doc. 82 at PageID 2991 ("Mt Pleasant's special projects consultant[] reviewed the Section 4 videos, observing that two lines had a number of low spots where water ponded").

Local government is provided with significant discretion in public works projects, as a rational basis can be found in "relation to the public health, the public morals, the public safety or the public welfare." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008) (internal quotes omitted) (quoting *Nectow v. City of Cambridge*, 277 U.S. 183, 187–88 (1928)). On summary judgment review, MPB has not come forth with any facts to suggest that Greene County improperly exercised its authority, let alone in a way that shocks the conscience. It is undisputed that Greene County properly identified sewer line defects that do not conform with its Sanitary Regulations and reasonably exercised its discretion to require those defects to be promptly remedied. Doc. 84 at PageID 2991-93. Greene County has a legitimate interest in avoiding future maintenance issues caused by defects and requiring that these defects be remedied rationally relates to this interest. *Cf. Schenck v. City of Hudson*, 114 F.3d 590, 594 (6th Cir. 1997) (holding that an ordinance capping the number of homes built in a city was not arbitrary and capricious because it was rationally related to remedying and improving infrastructure). Accordingly, the Court finds as a matter of law, based upon the undisputed facts presented, that Greene County has not acted in an arbitrary or capricious manner. Therefore, Greene County and Volkerding's joint motion for summary judgment is **GRANTED** regarding MPB's substantive due process claim.

B.     Equal Protection Claim

Defendants next move for summary judgment on MPB's equal protection claim. The Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. In this case, MPB seeks to assert an equal protection claim based on a "class of one" theory, arguing that Greene County inconsistently enforces its T-V inspection regulation without a rational basis. Doc. 84 at PageID 2996.

A "class of one" theory was recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), and differs from equal protection claims asserting the infringement of a fundamental right or discrimination against a suspect class. In *Village of Willowbrook*, the Court stated, "[o]ur cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. Thus, to prevail on a "class of one" theory, plaintiff must prove that: (1) it was "intentionally treated differently from others similarly situated"; and (2) "there is no rational basis for the difference in treatment." *Id*. "Class-of-one claims are generally viewed skeptically" and, therefore, "a plaintiff must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461-62 (6th Cir. 2012).

With regard to the first requirement, MPB submits evidence of other defective sanitary sewer pipes in other subdivisions that were inspected and approved by Greene County. Doc. 84 at PageID 2992-94. Certainly, "determining whether individuals are similarly situated is generally a factual issue for the jury." *Loesel*, 692 F.3d at 463 (citing *Eggleston v. Bieluch*, 203 F. App'x 257, 264 (11th Cir. 2006)). However, MPB fails to rebut Volkerding's statement that he only

9

became aware of the purportedly poor conditions of other sanitary sewer spans upon learning of the allegations in MPB's complaint. Doc. 78 at PageID 1873, 1876-77, 1962-63. Nevertheless, even assuming, *arguendo*, that a material issue of fact remains as to the existence of similarly situated pipe contractors, MPB provides no evidence that Defendants intended to treat MPB in a discriminatory manner. Doc. 84 at PageID 2996-97. MPB is thus unable to support its claim that it was intentionally treated differently because it fails to demonstrate -- with citations to evidence on summary judgment review -- that Volkerding knew of the poor conditions of the other defective sewer spans. *Id*. at PageID 2991.

MPB's equal protection claim further fails as to the second element. "A 'class of one' MPB may demonstrate that a government action lacks a rational basis in one of two ways: either by 'negati[ng] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Anders v. Cuevas*, 984 F.3d 1166, 1179 (6th Cir. 2021) (citations omitted). MPB has not alleged that the government action was motivated by animus or ill-will. Doc. 1 at PageID 11-12. Nor does it now point to evidence of animus or ill-will. Doc. 84 at PageID 2996-97. Further, MPB cannot negate every conceivable basis that could support Defendants' action because, as set forth above, the concern over the defective pipes and the ongoing maintenance issues posed by these sagging pipes is a conceivable, legitimate, and a rational basis for not approving the sewer pipes. Doc 82 at PageID 2868. Therefore, the Greene County Defendants' motion is also **GRANTED** as to MPB's equal protection claim.

  **C.** **Vagueness Claim**

MPB's third claim is that Greene County's T-V inspection regulation violates the vagueness doctrine as-applied to MPB. Doc. 84 at PageID 2997. A law or ordinance is

unconstitutionally vague if its prohibitions are not clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972); *see also Norton Outdoor Advert., Inc. v. Pierce Twp.*, No. 1:05-cv-401, 2007 WL 1577747, at *9 (S.D. Ohio May 30, 2007). An enactment is unconstitutionally vague where it fails to: (1) "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly," and (2) "provide explicit standards for those who apply them" so that it will not be applied in an arbitrary or discriminatory manner. *Id*. (citing *Grayned,* 408 U.S. at 108 (1972)).

In this case, MPB does not claim that the sanitary sewer regulations at issue are facially vague. Doc. 84 at PageID 2997. Instead, MPB claims that the regulations have a definite meaning, and Greene County is arbitrarily, unreasonably, and erroneously construing and applying them. Doc. 84 at PageID 2997-98. In order to succeed on a vagueness as-applied claim, a plaintiff must demonstrate that the ordinance is vague as applied to their specific conduct. *Wayne Watson Enterprises, LLC v. City of Cambridge*, 751 F. App'x 760, 766 (6th Cir. 2018). Due process requires that laws governing conduct give "an adequate warning of what they command or forbid." *Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1335 (6th Cir. 1978).

MPB was afforded a full and fair opportunity to understand and object to the sanitary sewer approval process before signing the construction contract at issue here. Doc. 13-1 at PageID 91-93. MPB was provided with the opportunity to submit an RFI ("Request for Information") prior to construction and throughout the construction of the sewer system. Doc. No. 71 at PageID 660-661, 663, 670. MPB also had the opportunity to hire a T-V inspection company with cameras that would be able to detect sags/bellies. Doc. 80 at PageID 2536-2538. Finally, before signing the construction contract, MPB was provided with the Sanitary Regulations and was able to review the standards concerning T-V inspections. *See generally* doc. 13-1. As it is undisputed that MPB

11

was provided with so many opportunities to inquire about what standards were necessary to meet, and an abundance of information about what defects would result in failure of the T-V inspection, Defendants have established, as a matter of law, that this regulation gave "the person of ordinary intelligence a reasonable opportunity to know what is prohibited" so that they could act accordingly. *Norton Outdoor Advert., Inc.*, 2007 WL 1577747, at *9. Additionally, the Sanitary Regulations provided MPB with clear standards about what will constitute a defect that can be found during a T-V inspection. Doc. 13-1. Therefore, the regulations are not vague as applied to MPB, and the Greene County Defendants' motion for summary judgment is **GRANTED** regarding MPB's vagueness claim.

### D. State Law Claims

Given that all of MPB's federal claims thus fail on the merits, the only remaining causes of action are the following arising under state law: (1) MPB's claim for declaratory relief regarding interpretation of the sanitary sewer Regulations; (2) MPB's tortious interference with contract claim; and (3) Inverness' counterclaim for breach of contract. "Once [a] district court dismisse[s] all of the claims over which it ha[s] original jurisdiction, it act[s] squarely within its discretion by declining supplemental jurisdiction over the remaining [state law] claim[s] and dismissing [them] without prejudice." *Booker v. City of Beachwood*, 451 F. App'x 521, 522–23 (6th Cir. 2011) (citing 28 U.S.C. § 1367(c)(3)). To that end, the Sixth Circuit has held that "[g]enerally, once a federal court has dismissed a plaintiff's federal law claim[s], it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

"Comity to state courts is considered a substantial interest; therefore, this Court applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been

dismissed -- retaining residual jurisdiction 'only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.'" *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011). There are any number of "considerations which lower courts in our circuit should weigh" when determining whether "convenience, comity, fairness, and judicial economy" outweigh the substantial interest in comity to state courts. *See Fox v. Brown Mem'l Home, Inc.*, 761 F. Supp. 2d 718, 724-25 (S.D. Ohio 2011). Importantly, however, "[w]hen all federal claims are dismissed before trial, the balance of considerations will usually point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *see also Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial … the state claims should be dismissed as well").

A federal court's discretion to decline supplemental jurisdiction over state-law claims extends to all stages of litigation, including summary judgment. *See Booker*, 451 F. App'x at 523; *see also Lloyd v. Midland Funding, LLC*, No. 3:12-cv-566, 2016 WL 3129199, at *2 (E.D. Tenn. June 2, 2016) (noting that "[w]hen a court rules on a motion for summary judgment, it is commonplace for the case to have been in litigation for many years, for the parties to have completed discovery, and for the case to be on the eve of trial," but that the court "has regularly declined to exercise supplemental jurisdiction over state law claims at that stage in litigation"). Here, were the Court to retain supplemental jurisdiction over the remaining state-law claims, it would be required to delve into numerous issues of local concern, including the interpretation of Greene County's Sanitary Regulations. In this Court's opinion, after carefully weighing the *Fox* factors, comity concerns weigh in favor of declining to exercise supplemental jurisdiction to avoid

needlessly deciding state-law issues, particularly those of local concern in Greene County. Accordingly, MPB's state-law claims are **DISMISSED WITHOUT PREJUDICE**.

### IV.

Based upon the foregoing, the Court:

(1) **DENIES** Plaintiff's renewed motion for partial summary judgment (doc. 84) and Plaintiff's motion for summary judgment on the claims related to Inverness (doc. 83);

(2) **GRANTS** Defendants' motion for summary judgment (doc. 82) with regard to Plaintiff's federal claims but **DENIES** such motion **WITHOUT PREJUDICE** as to Plaintiff's state-law claims;

(3) **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims;

(4) **DENIES AS MOOT** the parties' remaining motions (docs. 96, 104, 109[1], 113, 117, 122);

(5) **DIRECTS** the Clerk of Court to enter judgment in favor of Defendants; and

(6) **TERMINATES** this case on the Court's docket.

**IT IS SO ORDERED.**

Date:  February 24, 2021              s/ Michael J. Newman
                                       Hon. Michael J. Newman

---

[1] Plaintiff's motion for leave to file a USB flash drive containing videos of various sanitary sewer line spans (doc. 109) is denied not only because it is moot, but also because the Court finds that this evidence is not relevant to the outcome of this matter. This Court finds, as a matter of law, that there is no constitutional deprivation here, and therefore, videos of the sewer line spans will not alter this finding.